UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KAHL RODRIGUES,<br><br>　　　　Plaintiffs,<br><br>　　v.<br><br>FEDERAL DEPOSIT INSURANCE CORPORATION, *et al.*,<br><br>　　　　Defendants.<br>_____/ | No. C-12-1243 EMC<br><br>**ORDER GRANTING DEFENDANT FDIC'S MOTION TO DISMISS; GRANTING DEFENDANTS ONEWEST AND MERS'S MOTION TO DISMISS; AND GRANTING DEFENDANTS ONEWEST AND MERS'S MOTION TO EXPUNGE LIS PENDENS**<br><br>**(Docket Nos. 8, 13, 25)** |

　　　　In October 2011, Plaintiff Kahl Rodrigues filed this foreclosure-related action in state court against Defendants Indymac Bank, Mortgage Electronic Registration Systems ("MERS"), Onewest Bank, and RSM&A Foreclosure Svcs. In December 2011, the state court granted the Federal Deposit Insurance Corporation's ("FDIC") motion to be substituted in as a defendant in place of Indymac. The court also granted the FDIC a 90-day stay of proceedings. *See* Docket No. 1 (Not. of Removal, Ex. D) (order). Subsequently, the FDIC removed the state court action to federal court.

　　　　Currently pending before the Court are three motions: (1) the FDIC's motion to dismiss; (2) Onewest and MERS's motion to dismiss; and (3) Onewest and MERS's motion to expunge a lis pendens. Mr. Rodrigues failed to file an opposition to any of the three motions. Nor did Mr. Rodrigues appear at the hearing on the motions. Taking into account, *inter alia*, Mr. Rodrigues's failure to oppose, the Court **GRANTS** each motion.

///

///

## I.  FACTUAL & PROCEDURAL BACKGROUND

In his complaint, Mr. Rodrigues alleges as follows. Mr. Rodrigues was the owner of certain real property in Morgan Hill, California. *See* Compl. ¶ 9. It appears that, to purchase the property, Mr. Rodrigues took out a loan for $700,000 from Indymac in April 2007. The deed of trust reflects that MERS was the beneficiary of the security instrument and was to act solely as the nominee of Indymac and its successors and assigns. *See* Docket No. 14 (Onewest's RJN, Ex. A) (deed of trust). According to Mr. Rodrigues, Indymac "exploited [him] by 'rushing and pressuring' [him] into signing the loan documentation quickly, without any explanation whatsoever of the terms and legal effect of said loan nor by providing a copy for him to read, study, or understand, so that it could be given to defendants for review by an attorney." Compl. ¶ 13 (emphasis omitted). Mr. Rodrigues also alleges that Indymac

> failed to verify [his] ability to repay the Subject Loan that it wrote, manufactured facts and figures that would show [he] had the ability to repay the Subject Loan, misled [him] as to the terms and conditions of the Subject Loan, [and] failed to fully disclose the terms and conditions of the Subject Loan that [he] should have known to be able to make an informed decision about his ability to make the payments required . . . .

Compl. ¶ 45. Finally, Mr. Rodrigues alleges that Indymac "lowered its own underwriting standards in order to provide [him] with a loan that was and is financially unbearable and burdensome and pace [him] in a position where it was likely that he would default on [the] loan and lose the investment that he made." Compl. ¶ 46.

In 2009, MERS, acting as Indymac's nominee, assigned the deed of trust to Onewest. *See* Docket No. 14 (Onewest's RJN, Ex. C) (assignment). Thereafter, in 2011, Onewest assigned the deed of trust to Deutsche Bank National Trust Company, as trustee of a securitized trust. *See* Docket No. 14 (Onewest's RJN, Ex. E) (assignment). Subsequently, on June 13, 2011, RSM&A, acting as the agent of the beneficiary of the deed of trust, issued a notice of default to Mr. Rodrigues. *See* Docket No. 14 (Onewest's RJN, Ex. F) (notice). A trustee's sale was scheduled for October 2011. *See* Docket No. 14 (Onewest's RJN, Ex. H) (notice, dated 9/16/2011). Ultimately, the property was sold at a public auction on the scheduled date. The property was sold to Deutsche

Bank National Trust Company, as trustee of the securitized trust. *See* Docket No. 14 (Onewest's RJN, Ex. I) (trustee's deed upon sale).

According to Mr. Rodrigues, Onewest falsely represented to him that the other defendants were helping him receive a reasonable and fair loan modification. *See* Compl. ¶ 21. According to Mr. Rodrigues, Onewest and the other defendants also violated California Civil Code §§ 2923.5, 2923.52, and 2923.53 by not qualifying him or attempting to qualify him for a loan modification. *See* Compl. ¶¶ 22, 25.

As for MERS, Mr. Rodrigues seems to argue that its involvement in the foreclosure was illegal because it "was never licensed to be a Lending Institution nor was MERS ever licensed to do business in the state of California." Compl. ¶ 19; *see also* Compl. ¶ 3 ("Defendant MERS is NOT a lending institution subject to California Corporations Code Section 191 and therefore does not have legal capacity as a corporation to conduct business within the state of California, and most certainly cannot authorize or request the foreclosure of any loan, wherein they are the named beneficiary in the State of California . . . .") (emphasis omitted).

Finally, Mr. Rodrigues seems to assert that the foreclosure was invalid because "Defendants . . . do not hold the true factual notes securing the property." Compl. ¶ 20.

Based on, *inter alia*, the above allegations, Mr. Rodrigues assets the following causes of action:

(1) Wrongful foreclosure (against all Defendants). This claim appears to be based on the alleged violation of California Civil Code §§ 2923.5 and 2924 and California Corporations Code § 191. *See* Compl. ¶ 29.

(2) Conspiracy (against Indymac, MERS, and Onewest).

(3) Aiding and abetting (against Indymac, MERS, and Onewest). This claim appears to be based on the alleged wrongful foreclosure. *See* Compl. ¶¶ 40(b), ¶ 41.

(4) Fraud (against all Defendants).

(5) Predatory lending practices (against Indymac and MERS). This claim implicates HOEPA, TILA, and California Business & Professions Code § 17500. *See* Compl. ¶¶ 51-52.

(6) Violation of California Civil Code §§ 1916.7, 1920, and 1921 and California Corporations

1  Code § 191 (against all Defendants).

2  (7)     Accounting (against all Defendants).

3  (8)     Unfair business practice, *i.e.*, violation of California Business & Professions Code § 17200
4  (against all Defendants).

5  (9)     Breach of implied covenant of good faith and fair dealing (against all Defendants).  This
6  claim appears to be based on the alleged fraud by Defendants.

7  (10)    Declaratory relief.  Here, Mr. Rodrigues seeks to establish that the loan was "void ab initio."
8  Compl. ¶ 76.

9  (11)    Quiet title.

10 (12)    Injunctive relief.

## II.     DISCUSSION

A.  FDIC's Motion to Dismiss

As a preliminary matter, the Court takes into account how FDIC became involved in the case.  In 2008, the Office of Thrift Supervision ("OTS") issued an order appointing the FDIC as receiver for Indymac[1]; approving the creation of a new institution, Indymac Federal, as Indymac's successor; approving the transfer of certain assets and liabilities from Indymac to Indymac Federal; and appointing the FDIC as conservator for Indymac Federal.  *See* Docket No. 10 (FDIC's RJN, Ex. A) (order).  In 2009, the OTS issued an order putting Indymac Federal into a receivership and appointing the FDIC as its receiver.  *See* Docket No. 10 (FDIC's RJN, Ex. B) (order).

Mr. Rodrigues initiated his lawsuit against Indymac after the FDIC had already been appointed its receiver as well as the receiver of Indymac Federal.  Thus, the FDIC moved the state court to substitute the FDIC in the place of Indymac.  The state court granted the motion.  *See, e.g.*, *Esparza v. Indymac Bank, F.S.B.*, No. 4:09-cv-03891-SBA, 2010 U.S. Dist. LEXIS 84843, at *4 (N.D. Cal. July 26, 2010) (stating that, "when the OTS appointed the FDIC as receiver for IndyMac on July 11, 2008, the FDIC succeeded to all rights, title, interests, and powers and privileges of

---

[1] "Congress has granted the FDIC as receiver express statutory authority to dispose of receivership assets, thereby reducing the losses borne by federal taxpayers when federally insured financial institutions . . . fail."  *Sahni v. American Diversified Partners*, 83 F.3d 1054, 1058 (9th Cir. 1996).

4

IndyMac, and therefore was entitled to 'take over the assets of and operate' IndyMac with all the powers thereof[;] [t]hus, the appointment placed the FDIC in the shoes of IndyMac in performing all functions previously attributable to the institution, including defending against plaintiffs' action"). *See also Destfino v. Reiswig*, 630 F.3d 952, 957 (9th Cir. 2011) (noting that, "[w]hen the FDIC substituted IndyMac as a party, it filed a timely assertion of removal jurisdiction under 12 U.S.C. § 1819(b)(2)(B), providing an independent basis for federal jurisdiction"). The FDIC also asked the state court for a 90-day stay of proceedings, which was granted. *See* 12 U.S.C. § 1812(d)(12) (providing that, after the appointment of a receiver for an insured depository institution, the receiver may request a stay for a period not to exceed 90 days "in any judicial action or proceeding to which such institution is or becomes a party" and that such a request "as to all parties" shall be granted); *see also* Docket No. 14 (FDIC's RJN, Ex. C) (order). Prior to the expiration of the ninety days, the FDIC removed the state court action to federal court. *See* 12 U.S.C. § 1819(b)(2) (providing that, with exceptions not applicable here, "all suits of a civil nature at common law or in equity to which the [FDIC], in any capacity, is a party shall be deemed to arise under the laws of the United States" and that the FDIC may "remove any action, suit, or proceeding from a State court to the appropriate United States district court before the end of the 90-day period beginning on the date the action, suit, or proceeding is filed against the Corporation or the Corporation is substituted as a party").

Taking into account the authorities cited above, the Court concludes that FDIC is the proper party in this lawsuit instead of Indymac. The Court also notes that Mr. Rodrigues did not file an opposition, either in state court or in this Court, challenging FDIC's participation in the action in lieu of Indymac.

As to FDIC's motion to dismiss, the Court begins by noting that Mr. Rodrigues failed to file an opposition. Nor did he make an appearance at the hearing to oppose the motion. In light of the failure to oppose, the Court finds that it is appropriate to grant the motion. The Court also concludes the FDIC's motion has merit.

1        First, the Court lacks subject matter jurisdiction over any damages claims predicated on Indymac's conduct. "To satisfy Article III's case or controversy requirement, [the plaintiff] 'must have suffered some actual injury that *can be redressed* by a favorable judicial decision.'" *Henrichs v. Valley View Development*, 474 F.3d 609, 615 (9th Cir. 2007) (emphasis added). The FDIC argues that, in the instant case, any alleged monetary damages suffered by Mr. Rodrigues as a result of Indymac's actions are incapable of being redressed because Mr. Rodrigues is simply a general creditor and, as the FDIC determined in a resolution dated November 12, 2009, Indymac has "insufficient assets . . . to make any distribution on general unsecured claims . . . and therefore all such claims, asserted or unasserted, will recover nothing and have no value." Docket No. 10 (FDIC's RJN, Ex. E) (resolution, dated 11/12/2009). As explained in the FDIC resolution, there are insufficient assets to make a distribution to any general creditors because the liability owed to Indymac's depositors exceeds the total assets of the bank. *See* Docket No. 10 (FDIC's RJN, Ex. E) (resolution, dated 11/12/2009) (noting that "the total assets of the IndyMac Bank receivership are $63.131 *million* and the total deposit liabilities are $8.738 *billion*") (emphasis added). Depositors get priority over general creditors. *See* 12 U.S.C. § 1821(d)(11) (setting order of priority for "amounts realized from the liquidation or other resolution of any insured depository institution by any receiver appointed for such institution"; putting deposit liability ahead of "[a]ny other general or senior liability of the institution").

        *Heinrichs* supports the FDIC's position that its determination of worthlessness out Mr. Rodrigues's damages claims. In *Henrichs*, a company took out a construction loan from Capital Bank of California. Subsequently, the FDIC acquired the loan when it was appointed the receiver of the bank. The company then defaulted on the loan. Following the default, the company and two individuals entered into a settlement agreement with the FDIC pursuant to which they would pay the FDIC $300,000 and, in exchange, the FDIC would cancel or assign the loan and accompanying deed. The company ultimately decided that the FDIC should assign the loan. A percentage was assigned to the plaintiff. *See Henrichs*, 474 F.3d at 612. The plaintiff ended up suing the FDIC for damages based on an alleged breach of the settlement agreement. The Ninth Circuit noted that the plaintiff could

> look only to the assets of the Capital Bank receivership to satisfy any breach of contract claim.  The receivership distributed all of the failed bank's assets and was terminated in January 2001, fully three years before [the plaintiff] raised the claim.  *No assets remain in the receivership to satisfy a late-filed claim, thus rendering the claim moot.*

*Id.* at 615 (emphasis added).[2]

Second, the Court concludes that Mr. Rodrigues's claims for equitable relief are barred by 12 U.S.C. § 1821(j), which provides that, "[e]xcept as provided in this section, no court may take any action, except at the request of the Board of Directors by regulation or order, to restrain or affect the exercise of powers or functions of the [FDIC] as a conservator or a receiver."  12 U.S.C. § 1821(j).  In *Russell*, a case in which the FDIC substituted in for Indymac, Judge Fogel dismissed the plaintiff's claim for equitable relief on precisely this ground.  *See Russell*, 2010 U.S. Dist. LEXIS 38759, at *3.  Similarly, in *Sahni*, the Ninth Circuit held that, "[b]ecause the FDIC was acting within its statutory powers as receiver for [a bank] when it sold the HUD partnerships, the district court acted properly in dismissing plaintiff's action to rescind these sales."  *Sahni*, 83 F.3d at 1058.

B.    Onewest and MERS's Motion to Dismiss

Similar to above, the Court concludes that dismissal of the claims against Onewest and MERS is appropriate because Mr. Rodrigues failed to oppose the motion to dismiss in any way.  Moreover, the claims asserted against the companies largely appear lacking in merit on their face.

For example, the claim for wrongful foreclosure is predicated on a violation of California Civil Code §§ 2923.5 and 2924 and California Corporations Code § 191.  *See* Compl. ¶ 29.  However, the only remedy for a violation of § 2923.5 is a postponement of the sale and here the sale

---

[2] Other cases are in accord with *Henrichs*.  *See, e.g.*, *FDIC v. Kooyomjian*, 220 F.3d 10, 15 (1st Cir. 2000) (noting that "[t]he FDIC's worthlessness determination is unchallenged and, in the absence of a recoupment remedy, precludes any relief for defendants even it they were successful on their negligence claim and obtained a favorable judgment"); *Bennett v. One West Bank*, No. 10cv1884-BTM (RBB), 2011 U.S. Dist. LEXIS 67459, at *8 (S.D. Cal. June 23, 2011) (stating that, "[d]ue to the FDIC's no value determination, Plaintiff's claims for monetary relief cannot be redressed by a favorable judicial decision"); *Russell v. IndyMac Bank, F.S.B.*, No. C 09-03134-JF (PVT), 2010 U.S. Dist. LEXIS 38759, at *3 (N.D. Cal. Apr. 20, 2010) (taking note of "the formal determination of [FDIC's] Board of Directors that the total assets of the IndyMac and IndyMac Federal receiverships were worthless" and therefore concluding that "Plaintiff's claims for relief . . . are moot as to the FDIC because no effective relief can be granted").

has already taken place. *See Mabry v. Superior Court*, 185 Cal. App. 4th 208, 214 (2010) (stating that "[t]he right of action is limited to obtaining a postponement of an impending foreclosure to permit the lender to comply with section 2923.5"). As for the violation of § 2924, the statute essentially covers the procedure for a nonjudicial foreclosure. To the extent Mr. Rodrigues seeks to set aside the foreclosure based on an alleged violation of this statute, California courts have typically required tender "in an action to set aside a trustee's sale for irregularities in sale notice or procedure." *Storm v. America's Serv'g Co.*, No. 09cv1206-IEG (JMA), 2009 U.S. Dist. LEXIS 103647, at *23 n.9 (S.D. Cal. Nov. 6, 2009) (emphasis omitted). Finally, while the California Corporations Code does provide that "[a] foreign corporation shall not transact intrastate business without having first obtained from the Secretary of State a certificate of qualification," Cal. Corp. Code § 2105, and it is questionable whether MERS can invoke the statutory protections of § 191(d)(3), because any alleged failure of MERS to register in compliance with the California Corporations Code did not lead to the foreclosure. Furthermore, under § 2203, the remedies for a failure to register are limited, and a failure to register may be cured. *See Perlas v. Mortgage Elec. Registration Sys.*, No. C 09-4500 CRB, 2010 U.S. Dist. LEXIS 79705, at *18-19 (N.D. Cal. Aug. 6, 2010).

As another example, the conspiracy and injunctive relief claims are without merit because neither constitutes a claim for relief under California law. *See Applied Equipment Corp. v. Litton Saudi Arabia Ltd.*, 7 Cal. 4th 503, 510-11 (1994) (stating that "[c]onspiracy is not a cause of action, but a legal doctrine that imposes liability on persons who, although not actually committing a tort themselves, share with the immediate tortfeasors a common plan or design in its perpetration"); *Castillo v. Wachovia Mortg.*, No. C-12-0101 EMC, 2012 U.S. Dist. LEXIS 50926 (N.D. Cal. Apr. 11, 2012) (concluding that plaintiff's "injunctive relief claim fails because injunctive relief is a remedy, not a separate cause of action"). While a claim for accounting does exist under California law, the purpose of such a claim is to discovery what "balance is due the plaintiff," not what money is owed to the defendant. *See Teselle v. McLoughlin*, 173 Cal. App. 4th 156, 179 (2009) (noting that "[a] cause of action for an accounting requires a showing that a relationship exists between the plaintiff and defendant that requires an accounting, and that some balance is due the plaintiff that

can only be ascertained by an accounting"); *see also Ricon v. Recontrust Co.*, No. 09cv937-IEG - JMA, 2009 U.S. Dist. LEXIS 67807, at *18 (S.D. Cal. Aug. 4, 2009) (noting that, "while Plaintiff allegedly owes Defendants an amount past due on the underlying mortgage, Defendants do not allegedly owe Plaintiff any money"; adding that "[t]his failure to plead 'some balance is due the plaintiff' is fatal to Plaintiff's claim"); *Hafiz v. Aurora Loan Servs.*, No. C 09-1963 SI, 2009 U.S. Dist. LEXIS 60003, at * 6 (N.D. Cal. July 14, 2009) (noting that "Plaintiff does not cite any authority for the proposition that she can maintain a claim for an accounting to determine how much money she owes defendant").

Finally, as another example, there appear to be statute-of-limitations problems with the claims for fraud, predatory lending practices (based on TILA, HOEPA, and California Business & Professions Code § 17500), and violation of California Business & Professions Code § 17200. These claims, as pled, are all predicated on Indymac's conduct which took place in April 2007; however, Mr. Rodrigues did not file this lawsuit until March 2012, *i.e.*, almost five years later. This is beyond the statute of limitations for any of these claims for relief which is four years or fewer.

C.  Onewest and MERS's Motion to Expunge

Finally, Onewest and MERS move to expunge the lis pendens that Mr. Rodrigues filed and (presumably) recorded. Title 28 U.S.C. § 1964 provides:

> Where the law of a State requires a notice of an action concerning real property pending in a court of the State to be registered, recorded, docketed, or indexed in a particular manner, or in a certain office or county or parish in order to give constructive notice of the action as it relates to the real property, and such law authorizes a notice of an action concerning real property pending in a United States district court to be registered, recorded, docketed, or indexed in the same manner, or in the same place, those requirements of the State law must be complied with in order to give constructive notice of such action pending in a United States district court as it relates to real property in such State.

28 U.S.C. § 1964. Relying on § 1964, California federal courts have generally held that state law provides the standards by which a lis pendens should be expunged. *See, e.g.*, *Thomas v. Deutsche Bank*, No. C 12-00472 CRB, 2012 U.S. Dist. LEXIS 63871, at *13-16 (N.D. Cal. May 7, 2012).

California law provides that a lis pendens shall be expunged "if the court finds that the claimant has not established by a preponderance of the evidence the probable validity of the real

property claim." Cal. Code Civ. Proc. § 405.32. "'Probable validity' . . . means that it is more likely than not that the claimant will obtain a judgment against the defendant on the claim." Cal. Code Civ. Proc. § 405.3.

In the instant case, Mr. Rodrigues has not established the probable validity of his claim. As discussed above, Mr. Rodrigues made no attempt to oppose either motion to dismiss and the claims asserted in the complaint are largely lacking in merit. *See, e.g.*, *Thomas*, 2012 U.S. Dist. LEXIS 63871, at *16 (concluding that plaintiff could not demonstrate probable validity because "Plaintiff has failed to adequately state these claims"; adding that, "even if the Court assumed Plaintiff had stated a real property claim, he has failed to produce any evidence of its probable validity in his Opposition [–] Plaintiff provides no evidence at all in his Opposition"). Furthermore, Mr. Rodrigues failed to oppose the motion to expunge itself. The Court therefore grants Onewest and MERS's motion to expunge the lis pendens.

### III. CONCLUSION

For the foregoing reasons, the Court hereby grants the motions to dismiss as well as the motion to expunge.

As a result of this ruling, the only defendant remaining in the case is RSM&A (who has not yet made an appearance). The Court hereby orders Mr. Rodrigues to show cause why his claims against RSM&A should not be dismissed based on his failure to prosecute this case. Mr. Rodrigues shall file a response to this order to show cause by June 13, 2012. The Court forewarns Mr. Rodrigues that, if he fails to file a response to the order to show cause, then his claims against RSM&A shall automatically be dismissed and, with no other defendants in the case, final judgment shall be entered against him and in favor of all defendants and the case closed.

This order disposes of Docket Nos. 8, 13, and 25.

IT IS SO ORDERED.

Dated: May 30, 2012

_____
EDWARD M. CHEN
United States District Judge